## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**YURSIL KIDWAI,** *on behalf of himself and others similarly situated*,

       Plaintiff,

v.

**HUDSON COUNTY PROSECUTOR'S OFFICE,** *et al.*,

       Defendants.

Case No. 2:23-cv-23206 (ES) (SDA)

**OPINION & ORDER**

**December 31, 2025**

There are presently two motions before the Court: (1) a Motion to Compel the Deposition of Defendant Hudson County Prosecutor Esther Suarez ("Prosecutor Suarez") filed by Plaintiff Yursil Kidwai ("Plaintiff") (ECF No. 58); and (2) a Motion for a Protective Order filed by Defendants Hudson County Prosecutor's Office ("HCPO"), Prosecutor Suarez, Chief Assistant Hudson County Prosecutor Jane Weiner ("Weiner"), Detective Ashley Rubel ("Det. Rubel"), Detective Sergeant Leslie Murphy ("Sgt. Murphy"), and Detective Julia Medina ("Det. Medina") (collectively, "Defendants"). (ECF No. 61). Both motions are opposed. Oral argument was heard on July 7, 2025. For the reasons set forth herein, Plaintiff's Motion to Compel is **GRANTED in part and DENIED in part** and Defendants' Motion for a Protective Order is **GRANTED**.

### FACTUAL BACKGROUND/RELEVANT PROCEDURAL HISTORY

Plaintiff was incarcerated at the Hudson County Correctional Facility ("HCCF") after being charged with a criminal offense. (ECF No. 1, "Compl.", ¶ 26). Like all other inmates, while incarcerated, Plaintiff's telephone calls were monitored and recorded by the jail. (ECF No. 58-3 at ECF-designated p. 205, "Weiner Dep.", 93:1-25; 94:1-3). The inmates were notified at the beginning of all calls that the conversations were being recorded. (ECF No. 63-2 at ECF-

designated pp. 19, 20, "Edwards Dep.", 72:22-25; 73:1-6). However, inmates were instructed to provide the facility with their attorneys' telephone number(s) so that recording would cease when inmates spoke with their counsel. (*Id.* at 73:24-25; 74:1-12).

While incarcerated in 2020, Plaintiff spoke with his attorney via telephone. (Compl. ¶ 29). During oral argument, Plaintiff's counsel relayed that Plaintiff was unaware of the policy that required him to provide his attorneys' telephone number(s). Thus, HCCF was not notified that Plaintiff was speaking with his attorney and the telephone conversations were recorded by the jail in the ordinary course. (*Id.*).

While Plaintiff's criminal charges were pending, and as part of the ongoing investigation, Det. Rubel, an investigator with the HCPO, served a grand jury subpoena on HCCF seeking a copy of all telephone calls made by Plaintiff while at the jail. (ECF No. 58-1, "Pl. Br.", at 4; ECF Nos. 58-2, 58-3 at ECF-designated pp. 102, 103, "Cevasco Decl. MTC", Ex. C). HCCF produced responsive information to Det. Rubel, who summarized it in two memoranda that were sent to her supervisor, Sgt. Murphy, and Assistant Prosecutor Weiner. (Pl. Br. at 4; Compl. ¶ 31). Among the summarized conversations were telephone calls between Plaintiff and his counsel, as well as Plaintiff's paramour and co-defendant, Sania Chaudhry ("Chaudhry") and her counsel. (*Id.*). Weiner forwarded the memoranda to her supervisor, Chief Assistant Prosecutor John Mulkeen ("Mulkeen"). (Pl. Br. at 5; Cevasco Decl. MTC, Ex. H). Upon learning that Weiner and Det. Rubel had been made privy to privileged communications, they were removed from the case, and replaced with Assistant Prosecutor Barbara Drasheff ("Drasheff") and Detective Adam Drew ("Det. Drew"). (Pl. Br. at 5; Cevasco Decl. MTC, Ex. B at 156:12-17, Ex. I at 114:18-25, 130:17-21).

In December 2022, after Plaintiff found out through discovery about what happened with his privileged telephone calls, he filed a motion to dismiss the indictment. *State v. Kidwai*, No. A-3820-22, 2025 WL 1077474, at *1 (N.J. App. Div. Apr. 10, 2025). He subsequently withdrew the motion, pleaded guilty to second degree sexual assault on a minor, and was sentenced to a six-year term. *Id.* A judgment of conviction was entered on July 11, 2023. *Id.* Plaintiff later attempted to challenge his guilty plea on the grounds that the prosecutor's office had improperly accessed his privileged calls, but his appeal was dismissed on April 10, 2025. *Id.* at *3.

On August 18, 2023, the HCPO implemented Internal Office Policy No. 23-1 governing "Recorded or Stored Inmate Telephone Conversations and Privileged Communications." (Cevasco Decl. MTC, Ex. S, ECF No. 58-4 at ECF-designated pp. 146-48). This policy provided instructions as to how to handle privileged conversations when reviewing recorded jail conversations. (*Id.*).

Plaintiff served a tort claim notice on Defendants[1] and subsequently filed the instant lawsuit on December 19, 2023, on behalf of himself and a putative class of other inmates, alleging Defendants violated his constitutional rights by listening to his privileged attorney-client communications. (Compl.). Specifically, the Complaint alleges (i) a violation of constitutional rights pursuant to 42 U.S.C. § 1983; (ii) failure to train under 42 U.S.C. § 1983; and (iii) conspiracy to violate civil rights pursuant to 42 U.S.C. § 1985. (*Id.*). Despite the class allegations, and although there has been extensive discovery, to date, Plaintiff has discovered only one other inmate whose phone calls were recorded, those of his co-defendant Chaudhry. (Compl. ¶ 37; Pl. Br. at 4).

During the course of discovery, Plaintiff sought the deposition of Prosecutor Suarez. (ECF No. 40). As the highest ranking official in the HCPO, Prosecutor Suarez objected to the deposition.

---

[1] Pursuant to N.J.S.A. 59:13-5, a claimant must serve a tort claim notice upon the state at least 90 days before filing suit.

(*Id.*). The Court determined it was premature to resolve the issue before exploring all other sources of discovery, including document productions, interrogatories, and depositions of other parties and witnesses. (*Id.*). Therefore, the Court ordered such discovery to be completed before assessing whether it was appropriate to proceed with Prosecutor Suarez's deposition. (ECF No. 45).

Discovery is now largely complete, and Plaintiff again seeks to compel Prosecutor Suarez's deposition. Prosecutor Suarez again objects. Plaintiff acknowledges that Prosecutor Suarez is a high ranking official and that her deposition may only be allowed in extraordinary circumstances. (Pl. Br. at 8-12). However, Plaintiff argues such circumstances exist here because (i) Prosecutor Suarez is HCPO's policymaker and the only person who can testify as to her alleged failure to act, inadequate training, and acquiescence to a pattern and practice of constitutional violations; (ii) she has first-hand information concerning the implementation of Office Policy 23-1 that cannot be reasonably obtained from another source; (iii) the evidence sought from Prosecutor Suarez is not available through a less burdensome means or alternative sources; (iv) the deposition testimony is essential to establish Plaintiff's *Monell* claim; and (v) the deposition will not significantly interfere with Prosecutor Suarez's ability to perform her job because it will be scheduled at her convenience with allowance for frequent breaks. (Pl. Br. at 9-12).

Defendants object, claiming a lack of extraordinary circumstances that would warrant the deposition of this high ranking public official. (ECF No. 60, "Def. Opp.", at 6). Defendants explain that Prosecutor Suarez (i) has no personal knowledge of the privileged communications that serve as the basis for Plaintiff's allegations; (ii) was not personally involved in the review, summarization, or use of Plaintiff's calls; and (iii) never personally directed HCPO employees to review Plaintiff's calls. (ECF No. 60-1, "Freeman Decl.", Ex. A at 4, 6-7). They argue that the

creation of Office Policy 23-1 is irrelevant, as it was implemented three years after Plaintiff's calls were recorded. (Def. Opp. at 12).

Apart from the deposition of Prosecutor Suarez, Plaintiff also served a discovery request seeking the production of fax cover sheets and grand jury subpoenas served for recorded telephone conversations of more than 200 non-party inmates. (ECF No. 61-1, "Def. Br.", at 1). Plaintiff subsequently indicated that Defendants could redact all information from the grand jury subpoenas except the date, inmate name, detective name, and prosecutor's name. (ECF No. 63, "Pl. Opp.", at 6). Notably, Plaintiff is not – at least at this time – seeking any documents produced in response to the grand jury subpoenas; rather, Plaintiff seeks only the subpoenas themselves. (*Id.*). Defendants object on the grounds that the request for production of confidential grand jury materials, even with the limitations proposed by Plaintiff, violates individuals' privacy rights, creates security concerns, is overly broad and unduly burdensome, and seeks irrelevant information. (Def. Br. at 1-2). This discovery request is the basis of Defendants' motion for a protective order. (ECF No. 61).

## LEGAL ANALYSIS

### I.    Motion to Compel Prosecutor Suarez's Deposition

#### A.    Governing Law

Parties may generally obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). However, on "good cause" shown a court may grant a protective order preventing discovery. Fed. R. Civ. P. 26(c).

Generally, there is a presumption against deposing high-level government officials. *United States v. Morgan*, 313 U.S. 409, 422 (1941); *Stevenson v. City of Newark*, No. 20-cv-18722 (EP)

(AME), 2024 WL 1526102, at *5 (D.N.J. Apr. 9, 2024). This principle, known as the *Morgan* Doctrine, has been interpreted to hold that "[a]bsent extraordinary circumstances, good cause exists to preclude the deposition of a high level government official because there is a public policy interest in ensuring that high level government officials are permitted to perform their official tasks without disruption or diversion." *Buono v. City of Newark*, 249 F.R.D. 469, 470 n.2 (D.N.J. 2008); *see also 8 Erie St. JC LLC v. City of Jersey City*, No. 19-cv-9351 (JMV)(JRA), 2023 WL 3735949, at *3 (D.N.J. May 31, 2023). To determine if extraordinary circumstances exist, courts consider if the party seeking the deposition has shown that:

> (1) the official's testimony is necessary to obtain relevant information that is not available from another source;
>
> (2) the official has first-hand information that could not be reasonably obtained from other sources;
>
> (3) the testimony is essential to that party's case;
>
> (4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and
>
> (5) the evidence sought is not available through any alternative source or less burdensome means.

*Buono*, 249 F.R.D. at 470 n.2. Since the five-factor test sets forth overlapping factors, they are typically considered in groups: (i) factors 1, 2, and 5, which are directed at whether the government official has personal involvement or knowledge relevant to the case that cannot be obtained elsewhere, are considered first, *see United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 322 (D.N.J. 2009), and (ii) then, if satisfied, the Court proceeds to consider factors 3 and 4. *Stevenson*, 2024 WL 1526102, at *5. Here, there is no dispute that Prosecutor Suarez is a high-level government official or that the *Buono* factors apply.

## B.    Analysis

Turning to the first group of *Buono* factors (# 1, 2, and 5), the Court must assess whether Prosecutor Suarez has personal involvement or knowledge of the events underlying the Complaint that cannot be obtained from other sources. *Sensient Colors*, 649 F. Supp. 2d at 323 (cautioning that "[a]lthough personal involvement in or knowledge of the subject events seems to be a necessary prerequisite for deposing a high-ranking government official, it is not sufficient. A party must still show that the information cannot be gleaned from other sources or achieved through less burdensome means.").

Plaintiff explains that, to prove liability in this matter, he must establish either that (i) an official policy or custom of the HCPO caused the constitutional injury, or (ii) the HCPO was aware of a pattern of constitutional violations, failed to properly train its employees, and thereby acquiesced to a pattern and practice of constitutional violations. (Pl. Br. at 9-10). With regard to the first point, "[a] policy may be official and formal, but a custom may be found in a well-entrenched course of dealing, including a custom of failure to properly train personnel." *Summerville v. Gregory*, No. 14-cv-7653 (KM)(MAH), 2017 WL 3208346, at *2 (D.N.J. July 27, 2017); *see also Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law") (internal quotation marks and alterations omitted), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072. With regard to the second point, "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 61 (2011)

(citations omitted). "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* at 61-62 (citing *Canton v. Harris*, 489 U.S. 378, 395 (1989)).

Plaintiff claims he cannot prove either of these theories of liability without Prosecutor Suarez's testimony. Specifically, Plaintiff contends Prosecutor Suarez is "'the only one who can testify definitively in this matter regarding [her] own alleged failure to act, inadequate training of [staff] and acquiescence in a pattern and practice of' constitutional violations". (*Id.* at 10) (citing *Summerville v. N.J. State Police*, No. 14-cv-7653 (KM)(JBC), 2018 WL 401785, at *3 (D.N.J. Jan. 11, 2018)). Alternatively, Plaintiff argues that Prosecutor Suarez's testimony is necessary to establish his failure-to-train claim because "only her testimony will reveal whether she was 'deliberately indifferent to an obvious risk' that investigators would listen to recorded attorney-client telephone calls." (*Id.*) (citing *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 224 (3d Cir. 2014)). Plaintiff also asserts that Prosecutor Suarez has first-hand information about the implementation of Office Policy 23-1 that cannot be obtained from another source. (*Id.*).

Defendants respond by referring to Prosecutor Suarez's sworn interrogatory answers wherein she certifies that she had no personal knowledge of the documents or communications underlying Plaintiff's Complaint and did not personally direct HCPO employees to listen to Plaintiff's privileged calls. (Freeman Decl., Ex. A at 5-7, 13-15). Defendants clarify that, although Prosecutor Suarez was listed as someone with relevant knowledge in Defendants' interrogatory answers, the question instructed Defendants to identify anyone who had direct or *hearsay* knowledge of the allegations. (Freeman Decl., Exs. A & B; Def. Opp. at 3-4). Accordingly, the mere fact that Prosecutor Suarez's name was listed in response to this Interrogatory does not suggest she had personal knowledge of the events. (*Id.*). This was confirmed in the depositions of

the other named Defendants, who explained the only reason they listed Prosecutor Suarez as someone with knowledge was based upon their assumption that she was aware of the allegations after being served with Plaintiff's Complaint, and not because she was personally involved. (Freeman Decl., Ex. C at 27:8-30:16, Ex. E at 167:12-169:10, Ex. G at 135:12-136:4, Ex. I at 187:14-188:24). In fact, Drasheff, who ultimately prosecuted the case, stated that she never spoke with Prosecutor Suarez about Plaintiff's prosecution. (Freeman Decl., Ex. J at 175:11-15).

With regard to training, Defendants explain that all of these individuals testified about their training and any policies and practices at the HCPO regarding the handling of inmate/attorney telephone calls. (Freeman Decl., Ex. C at 63:1-64:3; Ex. E at 13:11-15:22, 157:3-160:4; Ex. G at 16:4-28:10, 98:12-102:1; Ex. I at 11:18-12:12, 181:18-182:21). Defendants therefore argue that Plaintiff has obtained this information from other sources, who have more direct knowledge of Plaintiff's claims, and that Prosecutor Suarez cannot offer anything further. (Def. Opp. at 10).

The Court finds that Prosecutor Suarez's testimony is not necessary to establish whether there was an official policy, practice, or custom that caused the alleged constitutional violation or whether there was a failure to train. There were at least five depositions of individuals directly involved in Plaintiff's prosecution – Det. Rubel, Det. Medina, Sgt. Murphy, Weiner, and Drasheff – all of whom definitively testified there was *no* policy or training addressing inmate/attorney telephone calls at the time the underlying events occurred. (Def. Opp. at 3-6). It is not necessary to depose Prosecutor Suarez to confirm this.

Nor is Prosecutor Suarez's testimony necessary to establish a pattern of deliberate indifference to constitutional violations caused as a result of a well-entrenched custom of listening to inmates' privileged telephone calls. It is Plaintiff's burden to establish that Prosecutor Suarez's deposition is necessary for this purpose. *Sensient Colors*, 649 F. Supp. 2d at 322 (citing *Buono*,

249 F.R.D. at 471 n.2). Plaintiff has failed to meet this burden. Namely, Plaintiff has not presented any proof that there was a widespread pattern and practice of listening to inmates' privileged telephone conversations, other than what occurred to him and his co-defendant. (Compl. ¶ 37). To the contrary, everyone deposed to date confirmed they rarely sought inmates' telephone conversations and, when they did, they were unaware of any instances where they received privileged calls. (ECF No. 63-1, "Cevasco Decl. MPO", Ex. B ("Weiner Dep."), at 61:20-25; 62:1-3 (when asked if attorney-client calls were records, Weiner responded "…in my 16 years at the prosecutor's office this is the first time I ever obtained a jail call with an attorney/client telephone call on it"), Ex. C ("Drasheff Dep."), at 52:9-25 (when Drasheff was asked how often jail calls were sought in her experience, Drasheff responded "I have never gotten jail calls in any of my cases."); Ex. D ("Rubel Dep."), at 57:10-15 (when asked, what other times has she subpoenaed calls from the HCCF, "I believe there was one occasion.")). Prosecutor Suarez also verified in her interrogatory answers that she was "not aware of any alleged reviewing and/or memorializing and/or utilizing privileged attorney-inmate telephone conversations by the HCPO's employees prior to the filing of the Complaint." (Freeman Decl., Ex. A at 6).

In short, there is nothing in the record that demonstrates an entrenched custom and Plaintiff's request is nothing more than a fishing expedition, which is not permitted. *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (prohibiting a fishing expedition based upon bare allegations); *Colony Ins. Co. v. 61 Kuller Road LLC*, No. 24-cv-5621 (KSH) (CLW), 2025 WL 1792867, at *7 (D.N.J. June 30, 2025) ("[D]iscovery is not a tool to be used to find a cause of action.") (citations omitted). Plaintiff wishes to take Prosecutor Suarez's deposition to explore whether she turned a blind eye to conduct that no other witness has

confirmed ever occurred outside of Plaintiff's case. Thus, Prosecutor Suarez's deposition is not justified on these grounds.

The implementation of Office Policy 23-1, however, poses a more difficult quandary. Office Policy 23-1 was implemented on August 18, 2023, shortly after Plaintiff's conviction and more than three years after the telephone conversations at issue in this case were recorded. (Cevasco Decl. MTC, Ex. S). Plaintiff feels he should be permitted to depose Prosecutor Suarez concerning the circumstances that led to its creation. (Pl. Br. at 13). Defendants argue that what happened three years later is not indicative of whether there was a "well-settled custom" at the time Plaintiff's rights were allegedly violated. (Def. Opp. at 12). However, nowhere in Defendants' opposition is it explained *why* the policy was created, and none of the other deponents can speak to this question. Given the timing of the policy, implemented only a month after Plaintiff's conviction, the Court suspects the impetus of the policy was the situation that arose in Plaintiff's case. However, it is possible that the policy was implemented for other reasons. Plaintiff should have an opportunity to probe Prosecutor Suarez on this limited issue because it could shed light on whether there was a widespread custom that required correction.

Turning to the third *Buono* factor, it is feasible that testimony from Prosecutor Suarez regarding the creation of Office Policy 23-1 is essential to Plaintiff's case. If Office Policy 23-1 was implemented to address a systemic problem of listening to privileged inmate calls, it could establish a pattern of deliberate indifference to constitutional violations. It might also constitute a tacit admission that, at the time the incidents underlying the Complaint occurred, the HCPO employees were not properly trained. Alternatively, it could be nothing more than a reaction to what happened in Plaintiff's criminal case and a desire to clarify things moving forward. Either way, Plaintiff should be permitted to probe Prosecutor Suarez on this limited issue.

11

The fourth and final *Buono* factor asks the Court to look at the burden the deposition will place on a Prosecutor Suarez as a high ranking public official. To address this burden, Plaintiff offered to ensure Prosecutor Suarez "every courtesy" including picking a convenient date and time and taking breaks as necessary so she can attend to her duties. The Court is cognizant of the burdens Prosecutor Suarez undoubtedly faces every day and the potential that allowing her deposition could open Pandora's box. *See 8 Erie St. JC LLC*, 2023 WL 3735949, at *8 ("if [public officials] had to testify every time a law they supported or opposed was challenged by civil litigants, lawsuits would have a crippling effect on the function of government."). Therefore, the Court finds it appropriate to set certain additional limitations on her deposition. First, there is a less burdensome means of obtaining this information than a deposition of Prosecutor Suarez by oral examination. Instead, Plaintiff shall be permitted to conduct the deposition on written questions pursuant to Fed. R. Civ. P. 31. *Summerville*, 2018 WL 401785, at *3 (directing the deposition of a high ranking state police official to be conducted by written questions to minimize the burden on the official). Second, the deposition shall be strictly limited to questions aimed at determining why Office Policy 23-1 was created. As this is a narrow topic, Plaintiff shall be limited to no more than 10 written deposition questions addressing why Office Policy 23-1 was created. If the answers to those questions reveal that the policy was implemented due to a systemic problem at the HCPO, then Plaintiff may petition the Court for a deposition on oral examination.

To summarize, Plaintiff's motion to compel the deposition is granted in part and denied in part. Plaintiff shall be permitted to serve 10 written deposition questions on Prosecutor Suarez limited only to the reason why Office Policy 23-1 was created. Plaintiff shall not be permitted to take Prosecutor Suarez's oral deposition at this time, or ask questions beyond this limited topic.

## II.        Motion for a Protective Order

### A.        Governing Law

Parties may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "[C]ourts construe relevancy broader at the discovery stage and more liberally in favor of disclosure." *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 215 (D.N.J. 2023) (citations omitted). While discovery is broad, "it is not unlimited… and should not serve as a fishing expedition." *Burgess v. Galloway*, No. 20-cv-6744 (FLW) (DEA), 2021 WL 2661290, at *2 (D.N.J. Jan. 28, 2021). The Court "must limit the frequency or extent of discovery" if (1) "the discovery sought is unreasonably cumulative or duplicative"; (2) the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (3) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (4) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

A court may issue a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden of demonstrating good cause and "a particular need for protection." *Doe v. Princeton Univ.*, 349 F.R.D. 92, 96 (D.N.J. 2025) (citation modified). To establish "good cause," the movant must demonstrate that disclosure will cause a defined and serious injury. *Id.* (citation modified). The court considers the following factors to determine whether good cause exists:

(1)     whether disclosure will violate any privacy interests;
(2)     whether the information is being sought for a legitimate purpose or for an improper purpose;
(3)     whether disclosure of the information will cause a party embarrassment;

(4)   whether confidentiality is being sought over information important to public health and safety;

(5)   whether the sharing of information among litigants will promote fairness and efficiency;

(6)   whether a party benefitting from the order of confidentiality is a public entity or official; and

(7)   whether the case involves issues important to the public.

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citations omitted).

### B.    Analysis

Here, Plaintiff seeks the production of grand jury subpoenas and fax cover sheets related to more than 200 non-party inmates at HCCF. Although Plaintiff has agreed to allow Defendants to redact all information other than the date, inmate's name, prosecutor's name, and detective's name, the Court still finds there is good cause for a Protective Order.

First, there can be no doubt that the discovery request will violate the privacy rights of non-party inmates. New Jersey Court Rule 3:6-7 provides that grand jury proceedings are secret. Several interests are served by safeguarding the confidentiality of grand jury proceedings, including protection of witnesses; risk of flight of those who are about to be indicted; and those who are accused but later exonerated are not subject to public ridicule. *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). As Defendants explained during oral argument, the mere disclosure of the inmate's name could compromise an ongoing investigation, jeopardize the individual's safety, or clue the inmate or other individuals that they are the target of a grand jury investigation. The sanctity of the grand jury process, alone, is enough to warrant the issuance of a protective order in this matter.

Second, there is no legitimate purpose for the production of these subpoenas. The information sought by Plaintiff will not reveal whether the inmates had any privileged calls with counsel that were recorded and then later produced to the prosecutor's office. At best, all that

Plaintiff would receive is a list of inmates whose recorded calls may have been turned over to the HCPO. The information produced would reveal nothing about the contents of those calls or whether privileged communications were turned over to the prosecutor's office. Plaintiff would then have to contact those inmates – some of whom might still be incarcerated and others who may have been released and difficult to locate – to determine if they had calls with their counsel while in jail. Even that would be inconclusive, as it would not disclose whether those privileged calls were turned over to the HCPO, particularly if that inmate had provided his/her counsel's phone number to the HCCF, which would have prompted the recording to cease. (Edwards Dep. at 73:24-25; 74:1-12). The likelihood that this laborious process would lead to fruitful evidence is slight, given that all of the individuals deposed to date confirmed that they rarely requested inmate's telephone records and, to the extent they did, they are unaware of any instances – other than Plaintiff – where privileged calls were produced. (ECF No. 63-1, Ex. B at 61:20-25, 62:1-3, Ex. C at 52:9-25; Ex. D at 57:10-15). In short, Plaintiff's request is a fishing expedition, which is not permitted. See *Eurofins Pharma US Holdings*, 623 F.3d at 157; *Colony Ins. Co.*, 2025 WL 1792867, at *7.

Third, disclosure of the information could cause embarrassment to those who are the target of the grand jury investigations. It could potentially reveal the identity of a cooperating witness. It could indicate that the inmate whose records were subpoenaed is the subject of new criminal charges. It could expose charges for which an individual was later exonerated. If the inmate was released from prison and trying to re-build his life, contact from Plaintiff's counsel about past grand jury proceedings could re-open old wounds.

Fourth, while the exposure of alleged constitutional violations is always in the public interest, it must be balanced against the public's interest in keeping grand jury proceedings

confidential. For the reasons set forth above, given the limited utility of the information being sought by Plaintiff, the Court finds the public interest weighs in favor of safeguarding grand jury proceedings and warrants the issuance of the protective order.

Fifth, the disclosure of the requested information will not promote efficiency. As explained throughout this opinion, it will not reveal whether other inmates had their privileged communications disclosed to the HCPO. To the contrary, it will undoubtedly lead to additional, lengthy, and burdensome discovery that is unlikely to yield any fruitful or relevant information.

Sixth, the party seeking the protective order here is a public entity. The HCPO is vested with the significant responsibility of prosecuting crimes. The information sought could compromise the sanctity of the grand jury process and thereby inhibit the prosecutor's office from effectively carrying out its duties.

Finally, the arguments made by the parties in this motion undoubtedly raise issue of public importance on both sides. On the one hand is the importance of protecting the fundamental right to privileged communications with counsel. On the other hand is the importance of preserving the sanctity of grand jury proceedings. Because the information sought concerns non-parties, and is unlikely to reveal information that will demonstrate a constitutional violation, the Court finds the public interest weighs in the Defendants' favor.

In short, the *Glenmede* factors support the issuance of a protective order here. Plaintiff will be barred from obtaining the non-party grand jury subpoenas or the fax cover sheets. Defendants' motion for a protective order is therefore granted.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion to Compel is GRANTED in part and DENIED in part and Defendants' Motion for a Protective Order is GRANTED. Accordingly, for the reasons set forth above,

**IT IS** on this **<u>31st</u>** day of **<u>December</u>**, **<u>2025</u>**:

**ORDERED** that Plaintiff's Motion to Compel (ECF No. 58) is GRANTED in part and DENIED in part; and it is further

**ORDERED** that Plaintiff shall be permitted to serve ten (10) written deposition questions on Prosecutor Suarez limited only to the reason(s) why Office Policy 23-1 was created; and it is further

**ORDERED** that Defendants' Motion for a Protective Order (ECF No. 61) is GRANTED; and it is further

**ORDERED** that the Clerk of the Court is directed to terminate the Motions at ECF No. 58 and ECF No. 61.

*<u>/s/ Stacey D. Adams</u>*
Hon. Stacey D. Adams
United States Magistrate Judge
