**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| YURSIL KIDWAI, | |
| **Plaintiff,** | Civil Action No.: 23-23206 (ES) (SDA) |
| **v.** | **OPINION** |
| HUDSON COUNTY PROSECUTOR'S OFFICE, *et al*., | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants Hudson County Prosecutor's Office ("HCPO"), Esther Suarez, Jane Weiner, Ashley Rubel, Leslie Murphy, and Julia Medina's (collectively the "Prosecutor's Office Defendants") motion to dismiss the Complaint. (D.E. No. 27 ("Motion"); D.E. No. 27-1 ("Mov. Br.")). The Court has carefully considered the parties' submissions, as well as the balance of the record, and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Prosecutor's Office Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In this putative class action, Plaintiff Yursil Kidwai ("Plaintiff") alleges that the Prosecutor's Office Defendants, along with Defendants Ronald Edwards, Hudson County Department of Corrections & Rehabilitation ("HCDC&R"), Hudson County Correctional Facility ("HCCF"), and John Does 1–10 (collectively, "Defendants"), violated his constitutional rights "by secretly monitoring, reviewing, digesting, sharing and otherwise using the substance of [his] privileged attorney-client telephone calls to investigate and prosecute the . . . criminal case [against

him]." (D.E. No. 1 ("Compl.") ¶ 1). More specifically, Plaintiff alleges that Defendants established a practice whereby HCCF officials recorded inmate-attorney calls and shared them with the HCPO, who then utilized them in connection with the inmates' criminal proceedings. (*Id.* ¶¶ 12–13 & 29–41).

Plaintiff "was incarcerated at HCCF after having been charged with a criminal offense" in or around May 2020. (*Id.* ¶ 26). Plaintiff alleges that, during his incarceration, HCCF monitored and recorded his legal telephone calls with his attorneys and, pursuant to the practice or custom of HCCF and HCPO, then provided those recordings to HCPO and the prosecutors responsible for his case. (*Id.* ¶¶ 29–30). For instance, Plaintiff alleges that HCCF shared certain of those privileged conversations with Defendant Rubel—a detective with the HCPO—who then prepared a written summary that she subsequently shared with Defendants Weiner (then an assistant prosecutor at the HCPO) and Murphy (a detective sergeant with the HCPO and Defendant's Rubel's supervisor). (*Id.* ¶¶ 7–8, 10, 30–33). Plaintiff also contends that Julia Medina, another HCPO detective, used that information as the basis for a certification she submitted in support of related civil forfeiture proceedings against him. (*Id.* ¶¶ 9 & 42). Defendants allegedly engaged in those activities in secret and withheld their conduct from Plaintiff's attorney, who only discovered it when the HCPO inadvertently produced in discovery copies of the summary that Defendant Rubel previously sent to Defendants Weiner and Murphy. (*Id.* ¶¶ 35–36). Finally, Plaintiff also alleges that Defendants Suarez (on behalf of the HCPO) and Edwards (on behalf of both the HCDC&R and the HCCF) were responsible for setting the policy or practice of secretly recording/sharing/utilizing inmate-attorney conversations at their respective organizations. (*Id.* ¶¶ 43–44).

Based on those allegations, Plaintiff filed a Complaint asserting three causes of action. (*See generally id.*).  First, Plaintiff seeks relief against Defendants Suarez, Weiner, Rubel, Murphy, Medina, and Edwards pursuant to 42 U.S.C. § 1983 in connection with their alleged violation of his rights under the Fourth, Sixth, and Fourteenth Amendments to the Constitution.  (*Id.* ¶¶ 55–62).  Second, Plaintiff seeks 1983 relief against Defendants HCPO, HCCF, and HCDC&R, (*id.* ¶¶ 63–69), alleging that those entities' "failure to provide adequate training caused the deprivation of Plaintiff's and class members' constitutional rights by the individual Defendants," (*id.* ¶ 68).  Third, Plaintiff alleges that Defendants Suarez, Weiner, Rubel, Murphy, Medina, and Edwards "conspired, while acting under color of state law, to deprive Plaintiff . . . of the equal protection of the laws, or of equal privileges and immunities under the laws, in violation of 42 U.S.C. § 1985." (*Id.* ¶ 71).  Plaintiff clarifies that he brings his claims against Defendants Suarez, Weiner, Rubel, Murphy, Medina, and Edwards in both their "individual and official" capacities.  (*Id.* at 1).

On July 22, 2024, the Prosecutor's Office Defendants moved to dismiss Plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See generally* Motion).  The Motion is now fully briefed and ripe for resolution.  (*See* D.E. No. 27-1 ("Mov. Br."), D.E. No. 29 ("Opp. Br.") & D.E. No. 30 ("Reply Br.")).  The remaining Defendants, HCCF, HCDC&R, and Ronald Edwards, filed answers rather than seeking dismissal of Plaintiff's claims.  (*See generally* D.E. Nos. 13 & 14).

## II.    LEGAL STANDARD

Under Rule 12(b)(6), the Court may dismiss a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a Rule 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The burden is on the moving party to show that the plaintiff has not stated a facially plausible cause of action. *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

In evaluating a plaintiff's claims, the Court considers the allegations in the complaint, as well as the documents attached to and specifically relied upon or incorporated therein. *See Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("'[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.'" (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (internal quotation marks omitted))). The Court may also consider "matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" (first citing *Pryor v. Nat'l*

4

*Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004))).

## III.    DISCUSSION

In seeking dismissal, the Prosecutor's Office Defendants argue:   (i) the Eleventh Amendment bars Plaintiff's claims against the HCPO (Mov. Br. at 8–14); (ii) Defendants Suarez and Weiner are entitled to absolute prosecutorial immunity (*id.* at 19–24); (iii) Plaintiff has not alleged facts sufficient to support a conspiracy claim under 42 U.S.C. § 1985(3) (*id.* at 27–29); and (iv) Plaintiff's Section 1983 claims against the Prosecutor's Office Defendants fail on multiple grounds (*id.* ¶¶ 14–16, 16–18, 24–27 & 30–35).  The Court will address these points in turn.

### A.  The Eleventh Amendment Bars Plaintiff's Claims Against the HCPO

The Court first examines the Prosecutor's Office Defendants' arguments that the Eleventh Amendment to the United States Constitution precludes Plaintiff's claims against the HCPO.  (*Id.* at 8–14).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The reach of the Eleventh Amendment has been extended to "suits by in-state plaintiffs, thus barring all private suits against non-consenting States in federal court."  *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).  The Eleventh Amendment precludes claims against the state for damages, as well as claims for injunctive or declaratory relief, and generally extends to bar suits against state officers acting in their official capacity.  *See Cory v. White*, 457 U.S. 85, 90–91 (1982); *Pa. Fed'n of Sportsmen Clubs v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).  While there are certain exceptions to Eleventh Amendment immunity, nothing in either the Complaint or the parties' briefing suggests

that they might apply in this case. *See Garden State Elec. Inspection Servs. Inc. v. Levin,* 144 F. App'x 247, 252 (3d Cir. 2005) (identifying (i) waiver by the state, (ii) congressional abrogation, and (iii) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law as the "three primary exceptions" to Eleventh Amendment immunity).

The United States Court of Appeals for the Third Circuit has acknowledged that county prosecutors' offices are considered arms of the State of New Jersey when they "'engage in classic law enforcement and investigative functions.'" *Est. of Lagano v. Bergen Cnty. Prosecutor's Off.,* 769 F.3d 850, 855 (3d Cir. 2014) (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir.1996)). "When county prosecutors perform administrative functions 'unrelated to the duties involved in criminal prosecution,' however, they act as county officials." *Id.* (quoting *Coleman*, 87 F.3d at 1505–06). Without addressing the propriety of the HCPO's conduct, it appears clear that the office was exercising "law enforcement and investigative functions" in connection with the conduct Plaintiff alleges in his Complaint, such that it must be considered an arm of the state for Eleventh Amendment purposes. Indeed, Plaintiff concedes this point. (Opp. Br. at 4 ("Although HCPO itself must be dismissed as a defendant . . ."); *Id.* at 6 n.4 ("[Plaintiff] is persuaded by the cases cited by Defendants and agrees that HCPO is immune from suit and should be dismissed as a matter of law.")). As the Eleventh Amendment therefore bars Plaintiff's claims against the HCPO, the court will dismiss those claims *with* prejudice.

### B.  Absolute Prosecutorial Immunity

The Court next turns to the Prosecutor's Office Defendants' argument that Defendants Suarez and Weiner are entitled to absolute prosecutorial immunity against Plaintiff's Section 1983 claims. (Mov. Br. at 19–24). When determining whether absolute prosecutorial immunity applies,

the Third Circuit employs a "functional test [that] separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work 'intimately associated with the judicial phase of the criminal process.'" *Fogle v. Sokol*, 957 F.3d 148, 159–160 (3d Cir. 2020) (quoting *Burns v. Reed*, 500 U.S. 478, 479 (1991)). "By contrast, a prosecutor's 'investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.'" *Id.* at 160 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)); *Roberts v. Lau*, 90 F.4th 618, 620 (3d Cir.), *cert. denied sub nom. Baer v. Roberts*, 145 S. Ct. 414 (2024) ("Thus, prosecutors are not entitled to absolute immunity when they 'perform[ ] the investigative functions normally performed by a detective or police officer.'" (quoting *Buckley*, 509 U.S. at 273)). The Third Circuit has refrained from applying bright-line rules or "categorial reasoning" to this process, as "[d]etermining the precise function that a prosecutor [ ] perform[s]" requires "a fact specific analysis." *Fogle*, 957 F.3d at 160; *Weimer v. Cnty. of Fayette, Pennsylvania*, 972 F.3d 177, 187 (3d Cir. 2020). The Court's inquiry, therefore, "'focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions.'" *Fogle*, 957 F.3d at 160 (quoting *Odd v. Malone*, 538 F.3d 202, 210 (2008)).

That "careful dissection" involves a two-step process:

> First, we "ascertain just what conduct forms the basis for the plaintiff's cause of action." Then, we "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served," to determine whether the [p]rosecutors have carried their "burden of showing that such immunity is justified for the function in question[.]" Thus, while we tend to discuss prosecutorial immunity based on alleged *acts*, our ultimate analysis is whether a defendant has established absolute prosecutorial immunity from a given *claim*.

*Id.* at 161 (internal citations omitted).

A review of Third Circuit case law demonstrates these principles in action.  For instance, in *Fogle*, the Court of Appeals found that certain alleged prosecutorial misdeeds, such as withholding exculpatory evidence, filing a criminal complaint without probable cause, and committing perjury both before and during trial, were "'intimately associated with the judicial phase of the criminal process'" and therefore subject to absolute immunity.  *Id.* at 164 (citation omitted).  Conversely, where the prosecutors "not only solicited false statements from jailhouse informants, but deliberately encouraged the State Troopers to do the same," the *Fogle* court found that immunity did not apply, as the prosecutors "were functioning not as advocates, but as investigators seeking to generate evidence in support of a prosecution." *Id.*  In *Roberts*, the Court of Appeals found that a prosecutor who "affirmatively searched for and approached a new witness to establish motive" was not entitled to immunity at the pleadings stage, as that function involved "quintessential 'police investigative work.'"  90 F.4th 620; *see also id.* at 623 ("[Defendant] allegedly embarked on a post-charge search for a new witness to plug a hole in the prosecution's case.  Thus, [he] is not entitled to absolute immunity at the motion-to-dismiss stage because his alleged conduct served an investigative function.").

"A prosecutor bears the 'heavy burden' of establishing entitlement to absolute immunity." *Odd*, 538 F.3d at 207 (quoting *Light v. Haws*, 472 F.3d 74, 80–81 (3d Cir. 2007)).  Indeed, "the onus is on the prosecutor to demonstrate 'that absolute immunity should attach to each act [s]he allegedly committed that gave rise to a cause of action.'"  *Fogle*, 957 F.3d at 160 (quoting *Light*, 472 F.3d at 80).  "'[T]hat burden is uniquely heavy' at the motion-to-dismiss stage 'because ... it is the [prosecutor's] conduct *as alleged in the complaint* that is scrutinized.'"  *Roberts*, 90 F.4th 631 (quotation modified) (quoting *Fogle*, 957 F.3d at 160).  "Meaning to earn the protections of absolute immunity, a defendant must show that the conduct triggering absolute immunity 'clearly

appear[s] on the face of the complaint.'" *Fogle*, 957 F.3d at 161 (quoting *Wilson v. Rackmill*, 878 F.2d 772, 776 (3d Cir. 1989)).

Against this backdrop, the Court will separately consider Plaintiff's factual allegations against Defendants Weiner and Suarez. Beginning with Defendant Weiner, Plaintiff alleges that she "was aware of, directed, supervised, approved and/or otherwise participated in" Defendant Rubel's actions. (Compl. ¶ 32). As discussed herein, those actions included "review[ing] and digest[ing] Plaintiff's privileged legal telephone calls, and shar[ing] a written summary of the privileged conversations with Defendants Weiner and Murphy." (*Id.* ¶ 31). Taking those allegations as true, the Court finds that Defendant Weiner's conduct is quintessential investigation and thus not subject to absolute immunity at the pleadings phase.

As to Defendant Suarez, Plaintiff contends that she "is and was responsible for setting the policies, customs, and practices of HCPO, including the policy, custom, or practice at issue here, specifically, the secret monitoring and recording of inmate-attorney communications and use of them in connection with the prosecution of those inmates." (Compl. ¶ 43). Plaintiff further alleges that "by virtue of her position," Defendant Suarez "knew of and authorized" the unconstitutional conduct at issue in the case "and/or . . . the unconstitutional practice, custom and/or policy pursuant to which [that conduct] took place." (*Id.* ¶ 45). Those allegations involve conduct that is administrative (e.g., setting policies, customs, and practices for the HCPO) or investigative (e.g., authorizing the process by which the HCPO obtained recordings of Plaintiff's attorney/client communications and summarized them for potential use in future prosecutorial efforts) in nature. Thus, the Court finds that Defendants Weiner and Suarez have not established that absolute prosecutorial immunity bars Plaintiff's claims against them at this stage of the case.

The Court will therefore deny the Prosecutor's Office Defendants' motion to the extent they seek dismissal on absolute prosecutorial immunity grounds.  That denial is without prejudice to their ability to assert an absolute immunity defense at a later stage, if appropriate, after obtaining additional information in discovery.

### C.  Conspiracy Claim Pursuant to 42 U.S.C. § 1985

The Court next considers Plaintiff's claim that the individual defendants "conspired, while acting under color of state law, to deprive Plaintiff . . . of the equal protection of the laws, or of equal privileges and immunities under the laws, in violation of 42 U.S.C. § 1985." (Compl. ¶ 71). While Section 1985 has three subparts, Plaintiff's claim plainly falls under subsection 3.[1]  The Prosecutor's Office Defendants argue that Plaintiff has failed to plead a viable claim under that statute.  (Mov. Br. at 27–29).  This Court agrees.

When discussing claims under 42 U.S.C. § 1985(3), the Third Circuit wrote:

> Section 1985(3) permits an action to be brought by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." . . . [T]he Supreme Court has made clear what a plaintiff must allege to state a claim under § 1985(3): "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States."

---

[1]    Subsection 1, titled "Preventing officer from performing duties," and Subsection 2, titled "Obstructing justice; intimidating party, witness, or juror" are facially inapplicable here.  Indeed, when addressing Plaintiff's Section 1985 claim in their briefing, both sides focused exclusively on Subsection 3. (*See* Mov. Br. at 27–29; Opp. Br. at 17–19).

*Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)).  Elaborating on well-established Supreme Court precedent, the Third Circuit noted:

> Despite its application to private conspiracies, § 1985(3) was not intended to provide a federal remedy for "all tortious, conspiratorial interferences with the rights of others," or to be a "general federal tort law."  The [Supreme] Court emphasized that because § 1985(3) requires the "intent to deprive of equal protection, or equal privileges and immunities," a claimant must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" in order to state a claim.

*Id.* at 135 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (internal citations omitted)). The "class-based invidiously discriminatory animus" necessary to support a Section 1985(3) claim has "two distinct aspects . . . the first is defined by form, and the second by function.  Thus, a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious."  *Id.* (citing *Aulson v. Blanchard*, 83 F.3d 1, 4–5 (1st Cir. 1996)).

The Court will assume, without deciding, and for the purposes of this motion only, that Plaintiff has alleged facts sufficient to establish (i) a conspiratorial agreement; (ii) acts in furtherance of the conspiracy; and (iii) damages flowing from that conduct.  Plaintiff's Section 1985 claim nevertheless fails because he has not pled any facts suggesting that Defendants' actions were "motivated by racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws." *Phifer v. Sevenson Env't Servs., Inc.*, 619 F. App'x 153, 155 (3d Cir. 2015).  Nor can the Court reasonably infer such an animus from Plaintiff's existing allegations.  Indeed, Plaintiff appears to concede this point, having neglected to address it in his briefing.  (*See generally* Opp. Br.).  The Court will therefore dismiss Plaintiff's conspiracy claim *without* prejudice and afford him a chance to replead that

11

cause of action.  Moreover, the Court notes that, while only the Prosecutor's Office Defendants have moved for dismissal, the problems inherent in Plaintiff's Section 1985 claim are not defendant-specific.  The Court will therefore dismiss that claim against *all* defendants.  *Bintliff-Ritchie v. Am. Reinsurance Co.*, 285 F. App'x 940, 943 (3d Cir. 2008) ("The District Court has the power to dismiss claims *sua sponte* under Rule 12(b)(6).").

The Court stresses that, should Plaintiff attempt to replead his conspiracy claim, he must remain mindful that not just *any* discriminatory "animus" will support a claim under 42 U.S.C. § 1985(3).  Rather, it must be one that Congress "intended" the statute to reach; specifically "a type of discrimination so 'invidious' as to qualify for § 1985(3) protection."  *Farber*, 440 F.3d at 135 & 138.  The Third Circuit has held, for instance, that race-based animus is actionable under that statute, (*id.*), while a "discriminatory animus directed toward [a person's] political affiliation" is not.  *Id.* at 143.  If Plaintiff does not plead facts demonstrating that Defendants' alleged conspiracy was driven by an "invidious" racial or class-based discriminatory animus, any amended Section 1985(3) claim will fail, and the Court will be inclined to find that further attempts at amendment would be futile.

### D.  Rule 12(b)(6) Challenges to Plaintiff's Section 1983 Claims

#### i.  Plaintiff's Section 1983 Claims Are Not Time-Barred

While the Prosecutor's Office Defendants argue that Plaintiff's Section 1983 claims fail on multiple grounds, the Court will begin with their threshold argument that those claims are barred under the relevant statute of limitations.  (Mov. Br. at 34–35).  "A [S]ection 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims."  *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  New Jersey, where Plaintiff's claims allegedly arose, "mandates a two-year statute of

12

limitations for personal-injury torts." *Id.* Plaintiff's Section 1983 claims are therefore subject to a two-year limitations period.

While "[f]ederal law . . . governs the issue of what constitutes [claim] accrual[,]" *id.* (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)), and thus dictates when a limitations period begins to run, "[s]tate law, unless inconsistent with federal law . . . governs the concomitant issue of whether a limitations period should be tolled." *Id.* "Under New Jersey law, a statute of limitations can be tolled based upon equitable principles, including the discovery rule[,] . . . which postpones a claim from accruing if a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person." *Id.* (citations omitted). In short, "the accrual of the claim will be postponed until the 'injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered[,] that he may have a basis for an actionable claim.'" *Id.* (quoting *Lopez v. Swyer,* 300 A.2d 563, 565 (N.J. 1973)).

Here, Defendants argue that Plaintiff's Section 1983 claims must be time-barred, because they appear to arise from his May 2020 incarceration at HCCF, and yet he did not file his Complaint until December 2023. (Mov. Br. at 35). Plaintiff has specifically alleged, however, that he "learned of Defendants' unconstitutional conduct only when Defendant HCPO inadvertently produced in discovery copies of Defendant Rubel's memorandum to Defendant Weiner and Defendant Murphy digesting the substance of Plaintiff's attorney-client telephone calls." (Compl. ¶ 36). Thus, it appears that the discovery rule would toll the limitations period until HCPO made that disclosure. As the motion record does not indicate when HCPO did so, the Court cannot currently find that Plaintiff's claims are time-barred. The Court will therefore deny the Prosecutor's Office Defendants' motion to the extent they seek dismissal of the Section 1983

13

claims on statute of limitations grounds.  That denial is without prejudice to their ability to assert a limitations defense at a later stage, if appropriate, upon a more complete factual record.

### ii.  "Official" Capacity Claims

In their next macro-level argument, the Prosecutor's Office Defendants contend that Plaintiff cannot bring Section 1983 claims against Defendants Suarez, Weiner, Rubel, Murphy, and Medina in their official capacities.  (*Id.* at 16–18).  This Court agrees.

Section 1983 imposes liability on "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983 (emphasis added).  Accordingly, to be held liable under Section 1983, a defendant must be a "person" within the meaning of the statute.  The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Pol.*, 491 U.S. 58, 71 (1989).  The Court has already found that the HCPO was acting as an arm of the state in connection with Plaintiff's claims.  *Supra* section III(A).  Therefore, to the extent Plaintiff seeks Section 1983 relief against Defendants Suarez, Weiner, Rubel, Murphy, or Medina in their official capacities, those claims fail, and the Court will dismiss them *with* prejudice.[2]

### iii.  Failure to Train

In his Second Cause of Action, Plaintiff has asserted a "failure to train" claim against Defendants HCPO, HCDC&R, and HCCF pursuant to 42 U.S.C. § 1983.  (Compl. ¶¶ 63–69).  For

---

[2]    The Court notes that Plaintiff has not addressed the Prosecutor's Office Defendants' "official capacity" argument.  Rather, Plaintiff contends that he has also sued Defendants Suarez, Weiner, Rubel, Murphy, and Medina in their individual capacities, and that they are therefore properly subject to suit under 42 U.S.C. § 1983.  (Opp. Br. at 15–16).  Plaintiff has, in fact, sued those defendants in both capacities.  (Compl. at 1).  The Court will separately address Plaintiff's "individual" capacity claims elsewhere in this section.

the reasons discussed in Section III(A), the Court has already found it appropriate to dismiss all claims against the HCPO itself *with prejudice*.  Defendants HCDC&R, and HCCF have not moved with respect to Plaintiff's claims against them.  While Plaintiff's Second Cause of Action is clearly directed at the entity defendants' conduct, rather than the actions of any individual defendant, (*see, e.g. id.* ¶¶ 66–69), Plaintiff's allegations concerning Defendant Suarez suggest that he intended assert this claim against her as well.  (*Id.* ¶¶ 42, 45).  Indeed, the parties addressed that claim in their respective briefing.  (*See* Mov. Br. at 24–27 & Opp. Br. at 16–17).  The Court will, therefore, focus its analysis on Defendant Suarez, and notes that, while Plaintiff has labeled his Second Cause of Action as a claim for "failure to train," the parties' arguments address Defendant Suarez's supervisory liability generally.  (*Id.*).

The Court begins by acknowledging that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs in order to be held liable as federal civil rights law does not permit a defendant to be held liable solely on a *respondeat superior* basis."  *Reeves v. Cnty. of Bergen*, No. 18-14061, 2025 WL 3539212, at \*5 (D.N.J. Dec. 10, 2025) (first citing *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015), and then citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988)).  "Claims against supervisory or municipal defendants thus generally require a plaintiff to plead facts showing that either a supervisor had actual knowledge of and acquiesced in an underling's wrongdoing, or the supervisor or municipal entity was responsible for a policy, practice, or custom which was the moving force behind the violation of the plaintiff's rights."  *Id.* (citations omitted).  In the former situation, "a supervisor may be personally liable under § 1983 if . . . she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [her] subordinates' violations."  *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572,

15

586 (3d Cir. 2004) (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir.1995)).  In the latter, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 725 (3d Cir.1989)).

In describing Defendant Suarez's conduct in this matter, Plaintiff alleges:

> Defendant Suarez is and was responsible for setting the policies, customs, and practices of HCPO, including the policy, custom, or practice at issue here, specifically, the secret monitoring and recording of inmate-attorney communications and use of them in connection with the prosecution of those inmates . . .
>
> Upon information and belief, Defendant Suarez, by virtue of her position, knew of and authorized:  (a) the unconstitutional conduct alleged herein, and/or (b) the unconstitutional practice, custom and/or policy pursuant to which the unconstitutional conduct alleged herein took place.

(Compl. ¶¶ 43, 45).  Plaintiff further alleges that "HCCF recorded at least one other inmate's . . . privileged attorney-client telephone calls and shared those recorded privileged communications with Hudson County prosecutors who used the information to prosecute the inmate whose attorney-client telephone calls were being recorded."  (*Id.* ¶ 37).

Taking Plaintiff's factual allegations as true, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has alleged that Defendant Suarez established the practice by which the HCPO works with the HCCF to obtain secret recordings of inmates' attorney-client privileged communications, for the purpose of using the content of those communications against the inmates in future proceedings.[3]  While Plaintiff has not explicitly

---

[3]      The Prosecutor's Office Defendants argue that Plaintiff failed to "assert any 'policy' or 'custom' by the HCPO, which somehow facilitates or acquiesces listening in on attorney-client conversations."  (Mov. Br. at 26).  This Court disagrees.  While Plaintiff has not provided a detailed description of how the HCPO and the HCCF shared attorney-client information, Plaintiff has alleged facts demonstrating that (i) Defendants secretly recorded and shared

alleged that Defendant Suarez did so with "deliberate indifference" to the consequences of that policy, its content is such that deliberate indifference is arguably "baked in" to the creation and implementation of the policy itself. In any event, the Court need not make a finding on that point because Plaintiff has also alleged that Defendant Suarez "knew of and authorized" the alleged constitutional violations issue in this case. (Compl. ¶ 45). While that allegation, on its face, appears to amount to a mere recitation of the elements necessary to establish a supervisory liability claim, Plaintiff's separate allegation regarding Defendant Suarez's creation of the policy underlying the allegedly unconstitutional conduct lends plausibility to the idea that she "authorized" that behavior. As the Prosecutor's Office Defendants have not explained why those allegations, taken together, are insufficient to establish a supervisory liability claim against Defendant Suarez, (Mov. Br. at 24–27; Reply Br. at 7–8), they have failed to carry their burden on this motion. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (In the context of a motion to dismiss pursuant to Rule 12(b)(6), "[t]he defendant bears the burden of showing that no claim has been presented."). To the extent the Prosecutor's Office Defendants seek dismissal of Plaintiff's claims against Defendant Suarez, their motion is therefore denied.

### iv. Sufficiency of Plaintiff's Factual Allegations Concerning the Other Individual Prosecutor's Office Defendants

The Prosecutor's Office Defendants also argue that Plaintiff failed to allege facts necessary to support a plausible entitlement to relief based on his Section 1983 claims against Defendants Weiner, Rubel, Murphy, and Medina in their individual capacity. (Mov. Br. at 14–16 & 30–34). Critically, the Prosecutor's Office Defendants do not dispute that secretly recording, sharing, or using Plaintiff's attorney-client communications might serve as a viable basis for his claim.

---

his attorney-client communications; (ii) they did the same to at least one other inmate; and (iii) Defendants Suarez (on behalf of HCPO) and Edwards (on behalf of HCCF and HCDC&R) created the policy or practice implementing that arrangement. (Compl. ¶¶ 29–34, 37 & 43–46). That level of detail is sufficient at the pleadings stage.

17

Rather, they contend that Plaintiff has not alleged facts sufficient to establish that the communications at issue were, in fact, privileged. (*Id.*; Reply Br. at 5–7). For instance, the Prosecutor's Office Defendants argue that Plaintiff failed to allege: (i) the name of the attorney(s) involved in those recorded conversations; (ii) whether the attorney(s) represented him in connection with "the criminal matter for which he was incarcerated"; (iii) whether the individuals were "clearly identified as his attorney during course of the call,"; (iv) "the content of those communications"; or (v) "the circumstances under which those communications were made." (Mov. Br. at 15–16 & 31). The Prosecutor's Office Defendants further argue that Plaintiff has not alleged whether he was aware that the HCCF recorded the communications at issue, and thus suggest that Plaintiff failed to proactively demonstrate that he did not waive any attorney-client privilege that may have otherwise attached to those calls. (Mov. Br. at 32; Reply Br. at 7).

The Court, however, finds that Plaintiff's factual allegations are sufficient to plausibly establish that the calls at issue in this case were privileged. First, Plaintiff alleged that Defendant HCCF "secretly monitored and record" his "legal telephone calls with his attorneys." (Compl. ¶ 29). As Plaintiff has labeled them as "legal telephone calls," the Court can—and must— reasonably infer that Plaintiff and his attorneys discussed legal matters during their phone conversations. Further, in light of Plaintiff's allegation that Defendant Medina thereafter used information from the calls in related civil forfeiture proceedings, (Compl. ¶ 42), the Court can also reasonably infer that the calls concerned legal issues connected with his arrest. Finally, while Plaintiff did not explicitly allege that he was unaware that his calls were being recorded, the Court can reasonably infer that fact from his other allegations. For instance, Plaintiff alleged that his "legal telephone calls with his attorneys were *secretly* monitored and recorded by Defendant HCCF." (*Id.* ¶ 29 (emphasis added)). That allegation clearly implies Plaintiff's lack of knowledge.

18

Indeed, Plaintiff referenced the "secret" nature of Defendants' alleged efforts to monitor and record inmate's legal calls throughout his Complaint. (*Id*. ¶¶ 34, 43–44, 48 & 58–60). Taking these allegations and reasonable inferences together, the Court finds that Plaintiff has adequately pled—for Rule 12(b)(6) purposes—that the calls at issue in his Complaint were subject to the attorney-client privilege.

The Prosecutor's Office Defendants also contend that Plaintiff engaged in impermissible group pleading, without alleging how any of the individual defendants violated his rights. (Mov. Br. at 32–34). In making that argument, they suggest that Plaintiff has simply "lump[ed]" them together, without providing any specific allegations concerning their individual conduct. (*Id*. at 33–34). That is not accurate with respect to Plaintiff's Section 1983 claims.

Plaintiff alleges that Defendant Rubel, a HCPO detective, reviewed the privileged communications at issue, prepared a written summary, and then sent that summary to both Defendant Weiner and her own supervisor, Defendant Murphy. (Compl. ¶ 31). Plaintiff further alleges that Defendants Weiner and Murphy "directed" Rubel to do so or otherwise "supervised" Rubel's activities. (*Id*. ¶¶ 32–33). Plaintiff alleges that Defendant Medina, another HCPO detective, used information obtained from this endeavor when making a certification "in support of a civil forfeiture application – that funds seized from Plaintiff 'were utilized in the furtherance of an unlawful activity,' or that the seized property 'has become and/or was intended to become an integral part of the illegal activities.'" (*Id*. ¶ 42). The Court has already addressed Plaintiff's allegations concerning Defendant Suarez. Plaintiff has thus alleged what each of the individual Prosecutor's Office Defendants did in connection with his 1983 claims, and those defendants bear the burden of establishing why Plaintiff's allegations are nonetheless insufficient. *Hedges*, 404

19

F.3d at 750.  The Prosecutor's Office Defendants have not done so, and the Court will not undertake that analysis on their behalf.

Finally, the Prosecutor's Office Defendants also argue that Plaintiff's class allegations fail because he made them on "information and belief," without "identify[ing] any other inmate by name or any specific case in which the same alleged activity occurred." (*Id.* at 16).  Defendant, however, has not cited any authority requiring such specificity at the pleadings stage.  Indeed, imposing such particularity would essentially eliminate the class action mechanism in most instances.  In the District of New Jersey, "'dismissal of class allegations at [the pleading] stage should be done rarely and . . . the better course is to deny such motion because the shape and form of a class action evolves only through the process of discovery.'" *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 752 (D.N.J. 2021) (citation omitted).  "'A defendant may move to strike class action allegations prior to discovery in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'" *Id.* (quoting *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003)).  The Prosecutor's Office Defendants have not made such a showing here.  The Court will therefore address Plaintiff's ability to maintain a class action if and when Plaintiff files a motion for class certification.

## IV.   CONCLUSION

Based upon the foregoing, the Motion is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's claims against the HCPO are dismissed *with* prejudice.  To the extent Plaintiff has sued Defendants Suarez, Weiner, Rubel, Murphy, and Medina in their official capacities, those claims are likewise dismissed *with* prejudice.  Plaintiff's claims under 42 U.S.C. § 1985 are

20

dismissed, *without* prejudice, as to all Defendants.  The Court denies the balance of the Motion.

An appropriate Order accompanies this Opinion.

Dated:  March 31, 2026

s/Esther Salas
**Esther Salas, U.S.D.J.**